after Bailey was decided, and it seemed like not an uncomfortable fit. I understand that the focus winds up being possession and furtherance, but is there really any earthly way a jury would not have found possession of this gun and furtherance of the crime given the nature of the way it was found, the two guns actually loaded? Maybe. I mean, it's the government's burden to establish guilt beyond a reasonable doubt, and that's why I say this is sort of a cumulative error case. This case does look, to get to the carrying wrong, it does look a lot like Moose Gorel, right? It does. But that's not what he was charged with. You know, that's where the defective indictment has an impact on this case, because if he's entitled to know what he has to defend against, and it was made clear at trial, you have to defend against possession and furtherance of the firearm. So in terms of could any jury not have found this? Well, the government has to prove it through evidence, and the only evidence that the government presented here was the evidence of its case agent about the link. What's the link between drugs and guns? We didn't have that. Wait a minute. So in the instructions to the jury, they seem to start out all right. The instruction number seven says that the defendant is charged with possession of a firearm in furtherance of a drug trafficking crime. Are you saying that the district court had to define what in furtherance means, or could the district court, before we get to the fact that these extraneous definitions are thrown in, I understand that's part of the problem, but the district court basically thinks the jury can figure out what in furtherance of a drug trafficking crime is. That's not a very technical word. I have to agree with that. I think this court has previously held that that sort of instruction is not required. The problem is the jury was then told the wrong legal standard. It's not just that there is an omission of the correct, the helpful phrase defining this. Well, the jury wasn't told that in furtherance of meant these other things. The jury got the instructions, right? But again, we're going to presume that the jury follows the court's instructions. And so a lay juror looking at this instruction is going to say, well, this plainly is about count two. And so if I find that this facilitator even had the potential of facilitating this drug transaction, then I can convict. They said in relation to, that must mean the same thing as in furtherance of. And I think the case has made clear that in furtherance of is a slightly higher standard than in relation to. It seems to me the difference when you compare the pattern instructions for the two is in relation to really is about just, is there the possibility that this could facilitate the crime? You don't necessarily even need to show that it actually did, that it did further, that it did advance, that it did promote, that it did facilitate the crime, just that it was there and it could have. And so the jury, it's not just that they were relying on what do we think our common sense definition of in furtherance of is. They were actually relying on a definition that relaxed the government's burden. And so that's why it's an error. It's not just the omission, but it's giving misleading instructions. Because again, when we're on plain error review, looking at jury instructions, what we're looking at is, was the jury misled? Did the instructions prejudice Mr. Thomas? Did they fairly and adequately represent the issues? Well, that's why I asked you the harmless error question in a sense. Even agreeing with everything that you say, that this was confusing and might have led them to apply a somewhat lower standard, isn't that largely hypothetical on the facts of this case? Right. And so again, that's why this is a cumulative error case, I think, because when you look at the actual evidence, we know that there were two loaded firearms in the same location, glove compartment with six ounces of methamphetamine. That's uncontested. The only evidence about, were those linked? Or Mr. Thomas's contention was, no, that was happenstance. I just happened to keep my guns there. I have a concealed carry license. It had nothing to do with the drugs. Now, you don't have to believe them, but there was no contrary eyewitness testimony about that. Lindell Woosley, for example, didn't say no. He always showed up with a prominent firearm, so I knew that I couldn't talk or anything like that. And instead, what we had was this inadmissible testimony from the case agent. And to be clear, this was not presented as expert testimony. And yet there was at least one expert presented, right? Wasn't there a chemist or somebody who was qualified? She was going to testify, and then Mr. Thomas stipulated to the fact that the drugs found were, in fact, methamphetamine and the weight. And so there were- I agree with you. This certainly looks like a mixture of expert testimony and fact testimony, particularly when he starts saying, often a firearm is this, and often people do that. I mean, that's classic expert testimony. And I think one of the worst problems in this case is that he then testifies about the facts of the case, even though he wasn't an eyewitness. So the prosecutor, after going through these hypotheticals with him, then says, well, and in this case, right, you found guns and drugs. He said, yeah, that's what we found. Well, he wasn't there. I mean, he was not the one who conducted the search. So that testimony- And nobody objected, right? So we're totally plain error here. That's right. We're on plain error here. Nobody objected. Yeah. Can you say a word about that, Mr. Henderson? That's exactly what I was going to ask you. That's a high hurdle, as you rightly acknowledge. How would you encourage us to reason through that on this fact pattern? Why do we have plain error? What you have to look at is whether this had an effect on Mr. Thomas's substantial rights. Do we have confidence that this jury verdict is fundamentally fair, or is that confidence shaken? In other words, do we have some intuition that the outcome of this case may have been different, but for these errors? And I think that what clinches it for me, at least, is the closing arguments where the government uses both this misleading jury instructions, or that's what's read to the jury, and then says, and you know that this is in furtherance of, because that's what the case agent said. And that testimony shouldn't have been admitted at all. And so the entire jury finding about whether Mr. Thomas committed this offense rests on inadmissible testimony that should not have been in front of the jury. You take that away, and I think the outcome of the case is different, right? Maybe we do make some sort of argument that there wasn't sufficient evidence. They didn't tie up the evidence because nobody testified. If they had qualified him as an expert witness, could he have testified that his judgment, it wasn't furtherance? If he were an expert, I'm not convinced he is an expert. I understand, but they had qualified him. Yeah, and that's the way it typically is done in these cases, is we have somebody qualified as an expert, and they give their testimony, and there's no problem. But of course, that's not what happened here. Why is it that you don't think he is an expert? Because there's nothing in the record other than his bare bones statement that he's been doing this for a long time to suggest that he is an expert. It's the absence of record evidence more than anything. What would have been enough? What would you have expected? Well, if he had explained, for example, what was his training and experience, how many of these sorts of cases has he done? Has he always been in this area of the country, for example? Does he usually deal with math offenses? Why is there this intuition that drugs and guns go together? Is it just an intuition? Because that doesn't meet the statistics. We have training. We know as an empirical matter that that is the purpose of having loaded guns next to drugs. So you disagree with the government's assertion in its brief that he, in fact, was qualified, that he, in fact, he did answer enough questions in the predicate to his testimony to establish him. If the government had asked the government to do that, would they have done that? Right. I mean, they just didn't make a record. So this is unlike, you know, in Tingle and Jett, the government actually tried to make their witness into an expert. And so they offered some relevant information about their expertise. The district court still didn't do the gatekeeping sort of thing, but that was more a procedural matter. Here, the government did not offer Agent Meyer as an expert witness. And so it never established any of that information. It's a lot like the bare bones affidavit that we referenced, where it's basically an officer saying training and experience. And so we certainly don't think that's enough. You are at your rebuttal time, if you would like to save it. I would like to save it. Thank you, Your Honor. All right. Thank you. Mr. Reitz. May it please the court, Brian Reitz for the United States. I would like to proceed in the order that Mr. Thomas has started, starting with the jury instructions. And on that, Chief Judge Wood, you're right. I don't think there's any earthly way that based on the evidence and the instructions here, there is a distinction between the two theories and the jury would not have not convicted on the interrelation. How did such a confusing mess of instructions get presented without objection from either side? I mean, we all know that the infuriarance, possession and furtherance of language was added by Congress after the Bailey decision had offered a more narrow interpretation of the statute. It's a different standard. Congress didn't just add possession to the list of use and carry. Maybe we all wish it had, but it didn't. It's a higher standard. And so why isn't there a real risk that this jury didn't hold the government to a high enough standard of proof here? And why does the judge give extraneous instructions that are just going to confuse? To the first question, Your Honor, I want to give two responses as to why this didn't lower the burden. First of all, the elements instruction, which has to be the seminal instruction identified in furtherance and nothing else as the closing arguments on the actual instructions given, I think it's important to compare the three instructions that Mr. Thomas says was irrelevant. So if we could just go down one by one on those three instructions. That's right. 10, 11 and 13. Yes, 10, 11 and 13. I'll start with 10 and 13 because I think 11 is maybe where the main show is at. Number 10, a person carries by knowingly transporting in his vehicle or container. Well, that is really synonymous with possession here. And by the way, Mr. Thomas agreed that he possessed a firearm. So I don't see that that particular instruction can cause any prejudice. Now we moved on to instruction 13. It says dearing means any point within the offense. That is true for any offense, correct? I don't think there's any objection there. So those two instructions, I don't see how possibly could constitute plain error. So that leaves comparing in furtherance and in relation. And I don't think there's any daylight between the instruction given based on the evidence here. So I will paraphrase the two instructions. I don't want to just completely read, but paraphrasing a few key points. So Mr. Thomas in his brief on page 19 and 20 says the stock instruction for in furtherance would not have been objectionable. That instruction says that, and again, I am paraphrasing, but it's on page 19 and 20. A person possesses a firearm if the firearm facilitates the crime. One, there must be some connection between the firearm and the crime. And point three, the mere presence of the firearm is insufficient. Now let's look at the in relation instruction that was actually given. A person carries a firearm in relation and it must, quote, it must at least facilitate or have the potential of facilitating the crime. Two, there must be a connection between the firearm and the drug trafficking crime. Three, its involvement cannot be a result of accident or coincidence. So the three key concepts are all conveyed here. One, both of them require facilitation. Two, they require a connection or a nexus between the firearm and the crime. Three, mere presence is insufficient. So I don't see any daylight in any practical matter when those instructions reach the jury, especially under plain air. As to how this happened, I don't know. Was this the ideal instructional package? It was not. But there's no daylight between that in further instruction and that in relation instruction as the evidence was admitted here. Judge Scudder. Mr. Wright, it's Judge Scudder. Mr. Henderson acknowledges, of course, that, you know, defense counsel should have objected to this. And, you know, he's open and candid about that. But, you know, there's a two-way street in litigation. And the concern that I have in looking at this is, doesn't the United States Attorney's Office, as a matter of course, adhere to Seventh Circuit pattern and jury instructions in cases like this? Yes. It's not the first time there's been trouble with the 702, you know, expert designation as well. And so I guess the question I have for you is, isn't the U.S. Attorney's Office taking, trying to take some care to avoid errors like this in criminal prosecutions? Because I think there's no question there's an error. Yes. Yeah. Our brief admits that both the instruction were not ideal and the dual role error. On the instruction, I think this is, you're right. The United States Attorney's Office should have done better in this case. I'm not here to say anything else. The instruction, I think it's a two-way street, but this is certainly why an objection would have been helpful here. Because I don't think that if there would have been an objection, if this was called to the court's attention, that this instructional package contained extraneous terms, there would have been no part to removing those. So that could have easily been remedied. I think built in your question, we're sort of moving on to the expert testimony. Yeah. Why doesn't the AUSA, who's handling the case, right, even though defense counsel may not be objecting and they should, why isn't the AUSA not recognizing that there's a real problem with dual role testimony? So on that, Your Honor, I will say it's the appellate division's responsibility to convey the message downstream of this court's opinions. I thought that we had done a good enough job doing this post-jet. It's apparent that we did not train sufficiently. So the appellate division takes responsibility for that. I do want to follow up by saying what we did do and what we plan to do to hope to prevent this mistake from occurring again. So after jet, I sent an office-wide email explaining the decision and how we should proceed. We then held a criminal division meeting that explained all that. I was mistaken. I thought that was sufficient. It's apparent that it was not. So this case has spurred further instruction. We were going to have an in-person training. Of course, that's not going to happen quite yet. After this argument, we're going to send another in-home training via email to hopefully prevent this from happening again. So we admit that we did not do a good job with the dual role testimony here, but that's not the same thing to say that it is plain error. I think it's fair to criticize the government's litigation on this case, but showing a distinction on the dual role testimony from this case in jet or tingle is difficult. So Mr. Thomas points to the fact that in those cases, we did portray the person to be an expert. The court just maybe didn't do explicitly the gatekeeping role on the record. That is a fair criticism of the government's litigation and the court, perhaps. I'm not sure how it weighs significantly on harmless error analysis because the evidence still would have reached the jury the same way. Well, could I just say though, I mean, not quite the same way because here you have this man, this FBI agent Myers gets up there. Yeah, let's say Meyer, you know, 23 years experience. He's telling the jury he knows all about this stuff and then he just slip slides into what's obviously, you know, secondhand evidence, but that they're given this aura of authority and if this had been done by the book, first of all, he may have been qualified as an expert, maybe very likely would have been qualified as an expert. I don't know, but this distinction between the expert phase of the testimony and any fact phase, maybe the government would have realized he's the wrong guy to use to talk about where were the firearms found since he's nowhere on the scene. He didn't find him. I mean, just everything else I think would have fallen in place in a different way and the jury wouldn't have been snowed with this, you know, authority figure somehow telling it what happened. So, your honor, you correctly identify the error that this witness testified as an expert and then moved into fact testimony. We're not disputing that. Fact testimony is not really even qualified to give. Sure, but that doesn't distinguish the case or the evidence from Tingle and Jett, because both of those witnesses gave expert testimony without the proper precautions that Jett subsequently gave and then those witnesses gave the same fact testimony. So, there's really no and that's what we really look at when we look at harmless error, much less under plain error. Was this something that misled the jury? Was the jury overly confused? And on those points, there's nothing to distinguish this case from Jett and Tingle. And I do want to take a step back and Judge Ripple, you asked about whether this witness would have been an expert. I think there's a little more in the record than Mr. Thomas says. So, this is mostly on page- Yeah. Mr. Henderson on the behalf of Mr. Thomas Fair. This is mostly on page 310 of the transcript. Agent Meyer is a 23-year veteran and he has always been assigned to New Albany. So, he always handled cases in this area. During his time with the FBI, he handled complex drug trafficking cases, drug trafficking cases. He was asked about his specialized training and he had- This is all in the record, I assume. This is all in the record. This is page 310 of the transcript. So, he said he had specialized training involving controlled substances. So, I would ask the court to compare this to Tingle. Really, it's about the same foundation as in Tingle. The one distinction I can see is that in Tingle, the officer said, they actually specified that he went to the county training academy. But that's sort of a distinction without a difference here. I think an FBI agent went to the FBI academy. We all know that. So, I don't know if there's really a distinction there to remove him from being an expert. And also, I want to point out, this is on transcript page 315, that before the offending testimony about the connection between the drugs and guns, the government did ask, quote, based on his training and experience. So, even though, admittedly, the JET precautions were not undertaken, that sort of preface to a question does indicate to the jury that it's more than just firsthand knowledge. And on that, I would also note that Agent Meyer was clear that he didn't have much firsthand knowledge because he wasn't there. He said that explicitly in the record. So, I think there's less likelihood the jury thought he had extraneous factual knowledge that made him more believable than a normal expert. So, if I could finish, if there are no questions on cumulative error, Mr. Thomas's argument, I think, looks good on this, perhaps, because he points to many, many errors. But really, when you get down to it, there's only two. One of them is the instructional error. I think that when you compare, there's no daylight and there's no possible room for prejudice whenever you compare the actual instructions and how the evidence was what the evidence admitted was. So, we're down to just the dual role error again. And this case, on that front, is indistinguishable from JET and Tingle as it reached the jury. And if there are no further questions, the government would be happy to press on. All right. I see none. So, thank you. Mr. Henderson, you have your three minutes. Thank you, Your Honor. I want to emphasize that this is not a cumulative error in admitting inadmissible testimony. Agent Meyer was never put out to be an expert. And when we're considering, well, maybe he would have qualified otherwise, the government violated Rule 16 and the district court's order commanding compliance with Rule 16. So, if this issue had been brought up, maybe he doesn't even testify, right? This is not Tingle and JET where we had notice of an expert. It's just the procedures on how exactly to admit this testimony weren't followed. We didn't have an expert here. And the government on appeal has done a 180 and said, well, no, actually, this is expert testimony. That's what we meant all along. But that's not what happened in the district court. Finally, there's just a question of what's going to be enough to tell the United States attorney for the Southern District of Illinois that you have to adhere to the rules in criminal prosecutions. And I would submit that a court decision from the Seventh Circuit saying Mr. Thomas deserves a new trial is a way to get their attention, especially as Mr. Wright has said, they've communicated the message and apparently the line attorneys aren't receiving it. And so, if this is affirmed, it's, well, we want another case. The prosecution was fine. There are a couple of missteps, but overall, it's fine. That doesn't affect serious change. So, we do think, regardless of the impact of a decision, this was a plain error. It affected Mr. Thomas's rights. He was convicted on erroneous legal theories based on evidence that should never have been admitted. So, we'd ask that the court vacate his conviction and remand. Thank you. All right. Thank you. Thanks to both counsel. We will take this case under advisement.